# OKLAHOMA OPERATING COMPANY *v.* LOVE ET AL., COMPOSING THE CORPORATION COMMISSION OF THE STATE OF OKLAHOMA.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 129. Argued January 23, 24, 1919; restored to docket for reargument April 21, 1919; submitted October 9, 1919; order for oral argument entered October 20, 1919; reargued December 17, 1919.—Decided March 22, 1920.

Under the constitution and laws of Oklahoma, an order of the state Corporation Commission declaring a laundry to be a monopoly and its business public, and limiting its rates, was not reviewable directly, by appeal, mandamus, prohibition or otherwise, in any court of the State, and the only recourse for securing a judicial test of the adequacy of the rates fixed was to disobey the order and to appeal to the state Supreme Court from further action of the Commission,

when taken, imposing a penalty for contempt; a penalty as high as $500 might be imposed, and, *semble,* a new one for each violation of the order; and each day's refusal was declared to be a separate offense. *Held,* applying *Ex parte Young,* 209 U. S. 123, 147, and other cases, that the provisions relating to the enforcement of the rates by penalties were violative of the Fourteenth Amendment, without regard to the question of the insufficiency of the rates. P. 336.

Jurisdiction of the District Court having attached in a suit to enjoin the enforcement of such a rate-fixing order and infliction of penalties, it is not divested by a change in the state law permitting direct review of the order in the state court. P. 337.

Enforcement of the penalties should be enjoined until the District Court can determine whether the rates are confiscatory, and if they be found so their enforcement, by penalties or otherwise, should be enjoined permanently; and, if found not confiscatory, there should be a permanent injunction of penalties accrued *pendente lite,* if the plaintiff had reasonable ground for contesting the rates as confiscatory. *Id.*

The State Commission need not be enjoined from investigating plaintiff's rates and practices, but its findings and conclusions must be subjected to the review of the District Court in the injunction case; and may be made part of the final proofs therein. P. 338.

Reversed.

THE case is stated in the opinion.

*Mr. C. B. Ames* for appellant.

*Mr. S. P. Freeling,* Attorney General of the State of Oklahoma, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This suit was brought in the District Court of the United States for the Western District of Oklahoma by the Oklahoma Operating Company against the Corporation Commission of that State to enjoin it from entertaining complaints against the company for the violation of orders limiting the rates for laundry work in Oklahoma City

theretofore entered by the Commission, under § 8235 [1] of the Revised Laws of Oklahoma (1910); and from doing any other acts or things to enforce said orders. The case comes here under § 266 of the Judicial Code by direct appeal from an order denying a motion for a preliminary injunction heard before three judges. The appellant presents to this court the question whether § 8235 is void under the Fourteenth Amendment, contending that under the laws of the State there was no opportunity of reviewing judicially a legislative rate fixed pursuant to that section except by way of defense to proceedings for contempt which might be instituted for violating the order, and that the possible penalties for such violation were so heavy as to prohibit resort to that remedy.

The bill as amended makes the following allegations: In 1913 the Commission entered an order declaring the Oklahoma Operating Company a monopoly and its business a public one, and directed it not to increase the rates then being charged except upon application to and permission of the Commission. Since that time operating costs have risen greatly and rates for laundry work pre-

---

[1] 8235. *Public business defined.* Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the State, by the corporation commission or by an action in any district court of the State, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business.

vailing in 1913 have become noncompensatory. Accord-
ingly in January, 1918, the company moved the Com-
mission to set aside its order of 1913 on the ground that
the laundry business was not within the purview of § 8235,
that the company was not a monopoly within the meaning
of that section, and that the section was void. The Com-
mission denied this motion and thereafter the company
established rates higher than those prevailing in 1913.
On account of this it is now threatened with proceedings
for contempt. Since the establishment of these higher
rates the company has been summoned before the Com-
mission to give information as to the cost of performing
laundry service in Oklahoma City and information in gen-
eral to determine what may be reasonable rates for laun-
dry service in that city. Upon these allegations a pre-
liminary injunction was sought below to restrain the
Commission from entertaining complaints for violation
of its order fixing rates and to enjoin it from proceeding
with the investigation regarding the cost of the service.

The scope of § 8235 and the prescribed course of proceed-
ings thereunder, as construed by the Supreme Court of the
State (*Harriss-Irby Cotton Co.* v. *State*, 31 Oklahoma, 603;
*Shawnee Gas & Electric Co.* v. *State*, 31 Oklahoma, 505;
*Oklahoma Gin Co.* v. *State*, 63 Oklahoma, 10) in connec-
tion with other legislation (§§ 1192 to 1207 of the Revised
Laws of 1910) and provisions of the state constitution
(Article IX, §§ 18 to 23), are so far as here material, these:
Whenever any business by reason of its nature, extent or
the exercise of a virtual monopoly therein is such that the
public must use the same or its services, it is deemed a
public business and as such is subject to the duty to render
its services upon reasonable terms without discrimination.
If any public business violates such duty the Corporation
Commission has power to regulate its rates and practices.
Disobedience to an order establishing rates may be pun-
ished as a contempt and the Commission has power,

sitting as a court, to impose a penalty therefor not exceeding $500 a day. Each day's continuance of failure or refusal to obey the order constitutes a separate offence. The original order may not be made nor any penalty imposed except upon due notice and hearing. No court of the State, except the Supreme Court by way of appeal, may review, correct or annul any action of the Commission within the scope of its authority or suspend the execution thereof; and the Supreme Court may not review an order fixing rates by direct appeal from such order. But in the proceedings for contempt the validity of the original order may be assailed; and for that purpose, among others, new evidence may be introduced. When a penalty for failure to obey an order has been imposed an appeal lies to the Supreme Court. On this appeal the validity of the original order may be reviewed; the appeal is allowed as of right upon filing a bond with sureties in double the amount of the fine imposed; the filing of the bond suspends the fine; and the period of suspension may not be computed against a concern in fixing the amount of liability for fines.

The order of the Commission prohibiting the company from charging, without its permission, rates higher than those prevailing in 1913, in effect prescribed maximum rates for the service. It was, therefore, a legislative order; and under the Fourteenth Amendment plaintiff was entitled to an opportunity for a review in the courts of its contention that the rates were not compensatory. *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota*, 134 U. S. 418, 456–458; *Ex parte Young*, 209 U. S. 123, 165, 166. The constitution of the State prohibited any of its courts from reviewing any action of the Commission within its authority except by way of appeal to the Supreme Court (Article IX, § 20); and the Supreme Court had construed the constitution and applicable provisions of the statutes as not permitting a direct appeal from

orders fixing rates. *Harriss-Irby Cotton Co.* v. *State,*
*supra.* On behalf of the Commission it was urged at the
oral argument that a judicial review of the order fixing
rates might have been had also by writ of mandamus or
of prohibition issuing out of the Supreme Court of the
State. But, in view of the provision of the state constitu-
tion just referred to, it must be assumed, in the absence
of a decision of a state court to the contrary, that neither
remedy, even if otherwise available, could be used to re-
view an order alleged to be void because confiscatory.
The proviso "that the writs of mandamus and prohibition
shall lie from the Supreme Court to the Commission in
all cases where such writs, respectively, would lie to any
inferior court or officer," appears to have no application
here. The challenge of a prescribed rate as being con-
fiscatory raises a question not as to the scope of the Com-
mission's authority but of the correctness of the exercise
of its judgment. Compare *Hirsh* v. *Twyford,* 40 Okla-
homa, 220, 230.

So it appears that the only judicial review of an order
fixing rates possible under the laws of the State was that
arising in proceedings to punish for contempt. The con-
stitution endows the Commission with the powers of a
court to enforce its orders by such proceedings. (Article
IX, §§ 18, 19.) By boldly violating an order a party
against whom it was directed may provoke a complaint;
and if the complaint results in a citation to show cause
why he should not be punished for contempt, he may jus-
tify before the Commission by showing that the order
violated was invalid, unjust or unreasonable. If he fails
to satisfy the Commission that it erred in this respect, a
judicial review is opened to him by way of appeal on the
whole record to the Supreme Court. But the penalties,
which may possibly be imposed, if he pursues this course
without success, are such as might well deter even the
boldest and most confident. The penalty for refusal to

obey an order may be $500; and each day's continuance of the refusal after service of the order it is declared "shall be a separate offense." The penalty may apparently be imposed for each instance of violation of the order. In *Oklahoma Gin Co.* v. *Oklahoma,* decided this day; *post,* 339, it appears that the full penalty of $500 with the provision for the like penalty for each subsequent day's violation of the order was imposed in each of three complaints there involved, although they were merely different instances of charges in excess of a single prescribed rate. Obviously a judicial review beset by such deterrents does not satisfy the constitutional requirements, even if otherwise adequate, and therefore the provisions of the acts relating to the enforcement of the rates by penalties are unconstitutional without regard to the question of the insufficiency of those rates. *Ex parte Young,* 209 U. S. 123, 147; *Missouri Pacific Ry. Co.* v. *Tucker,* 230 U. S. 340, 349; *Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 662.

The plaintiff is entitled to a temporary injunction restraining the Corporation Commission from enforcing the penalties. Since this suit was commenced, the legislature has provided by c. 52, § 3, of the Laws of 1919 (Sess. Laws Oklahoma 1919, p. 87) that in actions arising before the Commission under § 8235 there shall be the same right of direct appeal to the Supreme Court of the State as had theretofore existed in the case of transportation and transmission companies under Art. IX, § 20, of the constitution. But as plaintiff was obliged to resort to a federal court of equity for relief it ought to retain jurisdiction of the cause in order to make that relief as full and complete as the circumstances of the case and the nature of the proofs may require. The suit should, therefore, proceed for the purpose of determining whether the maximum rates fixed by the Commission are, under present conditions, confiscatory. If they are found to be so, a permanent injunction should issue to restrain their

enforcement either by means of penalties or otherwise, as through an assertion by customers of alleged rights arising out of the Commission's orders. *Missouri* v. *Chicago, Burlington & Quincy R. R. Co.*, 241 U. S. 533, 538. If upon final hearing the maximum rates fixed should be found not to be confiscatory, a permanent injunction should, nevertheless, issue to restrain enforcement of penalties accrued *pendente. lite*, provided that it also be found that the plaintiff had reasonable ground to contest them as being confiscatory.

It does not follow that the Commission need be restrained from proceeding with an investigation of plaintiff's rates and practices, so long as its findings and conclusions are subjected to the review of the District Court herein. Indeed, such investigation and the results of it might with appropriateness be made a part of the final proofs in the cause.[1]

These conclusions require that the decree of the District Court be reversed and that the case be remanded for further proceedings in conformity with this opinion.

*Reversed.*

---

[1] In *Ex parte Young*, 209 U. S. 123, 133, the District Court appears to have considered whether the rates were reasonable although the penal features of the act were declared void. *Missouri Pacific Ry. Co.* v. *Tucker*, 230 U. S. 340, was an action for the penalty; and the question here raised was not involved. That it is the penalty provision and not the rate provision which is void appears from the cases in which the validity of statutes was sustained because the objectionable penalty provisions were severable and there was no attempt to enforce the penalties. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 53; *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 417; *Grenada Lumber Co.* v. *Mississippi*, 217 U. S. 433, 443; *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor*, 223 U. S. 280, 286; *Wadley Southern Ry. Co.* v. *Georgia*, 235 U. S. 651, 662.