REQUESTED BY: Senator Peter Hoagland Member of the Legislature 1101 State Capitol Lincoln, Nebraska 68509
Dear Senator Hoagland:
You have requested the opinion of this office regarding LB 205, which among other things, authorizes arson investigators in a metropolitan class city to summon persons to testify regarding an inquiry into the cause, origin and circumstances of a fire or explosion and to require the production of any book, paper or document deemed pertinent to such inquiry. The provisions of LB 205 authorize such arson investigators, subject to the approval of the chief of the fire department, to issue the subpoenas without prior judicial approval, such as is constitutionally required for the issuance of a search warrant. Initially, you have inquired whether the procedures embodied in LB 205 for the issuance of a subpoena duces tecum, i.e. a summons to produce documents, violate the Fourth Amendment prohibition against unreasonable searches and seizures.
Since the much mooted case, Boyd v. United States,116 U.S. 616 (1886), it has been accepted that a subpoena duces tecum comes within the Fourth Amendment. The enforced production of books and records, while not an actual search, has been said to constitute a `constructive search.' Peoplev. Allen, 410 Ill. 508, 103 N.E.2d 92 (1951). However, it is clear that the demands of the Fourth Amendment with respect to a search and seizure under a search or arrest warrant do not apply equally to a subpoena duces tecum. In reAddonizio, 53 N.J. 107, 248 A.2d 531 (1968).
In Oklahoma Press Publishing Company v. Walling,327 U.S. 186 (1946), the Supreme Court considered the validity of a subpoena duces tecum issued by the Wage Hour Administrator to an employer with respect to compliance with the Fair Labor Standards Act. The subpoenaed records related to whether the Act covered the employer and also to whether the employer had obeyed the statute. The subpoena was challenged for, among other things, constituting an unreasonable search and seizure in violation of the Fourth Amendment. In rejecting the employer's challenge, the court noted that the Fourth Amendment in the context of an administratively issued subpoena duces tecum;
 At the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be `particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.
Id. at 208. The court further explained:
 It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command. This has been ruled most often perhaps in relation to grand jury investigations, but also frequently in respect to general or statistical investigations authorized by Congress.
 The requirement of `probable cause, supported by oath or affirmation' literally applicable in the case of a warrant is satisfied, in that of an order for production by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in `describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.
Id. at 209. See also, United States v. Morton Salt Company,338 U.S. 632, 651-653 (1950); See v. Seattle,387 U.S. 541, 544-545 (1967).
Based on the above authorities, it appears that the Legislature may authorize enforcement agencies to issue a subpoena duces tecum without prior judicial approval and that such procedure on its face does not run afoul of the Fourth Amendment. However, a particular subpoena could be challenged on Fourth Amendment grounds if the documents requested were irrelevant to the investigation or if the description of the documents set forth in the subpoena was so overly broad, vague or general as to be unduly burdensome.
Additionally, you have inquired:
 If the cases do appear to permit state Legislatures to authorize certain law enforcement officers to issue subpoenas, do they require any procedural safeguards that are not present in this proposal, such as the ability of the person subpoenaed to attempt to quash the subpoena in court before being liable for contempt or other criminal sanctions?
The safeguard inherent in a subpoena duces tecum is the right to litigate the validity of the subpoena prior to producing the documents requested. In See v. Seattle,supra, at 544, the Supreme Court noted that while an agency may demand documents and records by issuing an administrative subpoena, the enforcement of such demand does not lie with agency officials. Rather the subpoenaed party is entitled to judicial review of the reasonableness of the demandprior to suffering penalties for refusing to comply.
The provisions of LB 205 require the chief of the fire department to apply to the district court for enforcement of the subpoena. The court is authorized to punish persons disobeying any subpoena for contempt. Persons subpoenaed who refuse to comply could apparently, as their defense to such action, object to the validity of the subpoena, assert a privileged communication or assert their right to invoke the Fifth Amendment prohibition against self-incrimination. Judicial review is thus provided as part of the contempt proceeding. However, it appears under section 3 of LB 205 that if the asserted defense is rejected by the court or on appeal, the person subpoenaed, while potentially asserting the objection in good faith, may nevertheless be found in contempt. In other words, in order to avail himself of the opportunity for judicial review, the person subpoenaed must risk the penalties for contempt, which include fine and imprisonment. Neb.Rev.Stat. § 25-2121 (Reissue 1979).
In Reisman v. Caplin, 375 U.S. 440 (1964), the petitioners challenged a summons to produce certain audit reports which had been issued by the secretary of the Internal Revenue Service. One of the arguments advanced by the petitioners was that the penalties of contempt risked by a refusal to comply with the summons were so severe that the statutory procedure amounted to a denial of judicial review, citing Ex Parte Young, 209 U.S. 123 (1908) and OklahomaOperating Company v. Love, 252 U.S. 331 (1920). In said cases, the provisions at issue were found to violate the Fourteenth Amendment because certain railroad and laundry rates could only be challenged by failure to comply with said rates which occasioned a risk of both imprisonment and fines regardless of the willfulness of the failure to comply. The court in Reisman, supra, distinguished said holdings, noting that the I.R.S. provision at issue authorized a finding of contempt, and a fine or imprisonment, only upon the `neglect' of the parties subpoenaed to appear or to produce, which was interpreted by the court so as to exclude a good faith attack upon the validity of the summons.
Based on the above authorities, in our opinion, to the extent the provisions of LB 205 permit punishment for contempt for failure to comply, regardless of the existence of a good faith attack on the validity of the subpoena, said provisions could be subject to constitutional challenge.
Very truly yours, PAUL L. DOUGLAS Attorney General Lynne Fritz Assistant Attorney General